UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL BANKSTON, | No. C 06-2517 MHP (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| MARTIN VEAL, warden, | |
| Respondent. | |

## INTRODUCTION

Rafael Bankston, a prisoner at the California Medical Facility in Vacaville, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

The California Court of Appeal described the evidence of the crimes that led to the rape and kidnapping convictions.

> Denise testified that she was raped after leaving her Oakland home to buy orange juice at a local store on the evening of December 27, 2001. Denise was 16 years old and 5 feet, 2 inches tall. Denise had been home watching television in her pajamas. She had a sore throat and a cold, and received her mother's permission to go to the store for orange juice around 9:00 p.m. Denise put her jeans on over her pajama pants and left for the store. In addition to the pajama pants and jeans, Denise wore underwear, a T-shirt, a coat, and tennis shoes. Some of the clothes were recent Christmas presents.
>
> Denise rode a bicycle, first to one store, and then to another store in search of chilled orange juice. Upon arriving at the second store, Denise saw defendant standing in front of the door. Denise had seen defendant many times in the neighborhood and around the store. Defendant had recently asked a friend of Denise

United States District Court
For the Northern District of California

for Denise's telephone number, but the friend told him that Denise was too young for him.

Denise parked her bike in front of the store and went inside where she bought orange juice. When Denise exited the store, she found that her bike had been moved and saw its rear wheel protruding from behind a gate leading to the store's backyard. Denise went through the gate and saw defendant holding the bike by the handlebars. Denise tried to pull the bike away from defendant, but he pulled back and started moving the bike closer toward him. Defendant then wrapped his arm around Denise from behind and covered her mouth with his hand. Defendant told her: "[S]hut up and don't say nothing." The yard was dark and Denise was scared. Defendant pulled Denise 22 feet from the gate into a storage shed.

Once inside the shed, defendant told Denise to "shut up before he punch[ed]" her. Denise spilled her orange juice and slipped on it, landing on a paint bucket. Defendant twice demanded that Denise remove her pants and, when she refused, he pulled down her pants as she cried and struggled to rise from the paint bucket. Defendant held Denise down by the shoulders. Denise, who was a virgin, felt defendant's penis pushing against her vaginal area and experienced "burning" pain. Denise felt a wet substance by her vagina, and then defendant stood up and walked out of the shed.

Denise pulled on her clothes and recovered her bike by the store gate. Denise tried riding her bike but it was too painful. Denise started to walk her bike toward home. She walked past the house of a neighbor and family friend, T. Owens. Denise was still crying, and had paint on her pants and tennis shoes. Owens saw the girl and asked what was wrong. Denise said that defendant raped her. Denise told Owens "'He just pulled me on the side of the store and raped me,'" and "'I didn't ask for this.'" According to Owens, Denise said she was "scared to go home." Denise testified that she was not afraid to tell her mother that she had been raped, but did feel shame. Owens accompanied Denise home.

Denise's mother had been worried because Denise had been gone "too long for anybody to go to the store and back." Denise's mother was coming out of the door to look for Denise when she saw her daughter and Owens coming up the stairs. Owens told Denise's mother what happened, and the mother telephoned the police. Defendant was arrested near the store around 10:00 p.m., and Denise went with the police to the scene and unhesitatingly identified him as the rapist. Defendant's pants and coat were marked with paint, as were Denise's clothes. The police found paint spilled in the store's storage shed, and other things knocked over inside.

Denise underwent a sexual assault examination that found physical injuries consistent with rape. Denise had vaginal bleeding, lower abdominal pain, tenderness, swelling, and half a dozen "immediately evident" injuries to the external genitalia including abrasions, bruising, and redness that were visible to the unaided eye. The nurse who conducted the examination had performed numerous pelvic examinations of women of all ages, and testified that she never saw injuries of the nature or number that Denise suffered in anyone who had consensual sex. Even among women alleging rape, Denise's injuries were severe.

The defense argued that Denise and defendant had consensual sex. A family friend of defendant, who was like an aunt to him, testified that she saw a teenage girl on a bicycle talking flirtatiously to defendant on the night of the alleged rape, and that the girl went with him willingly behind the store gate. On cross-examination, the witness admitted that she never went to the police or district attorney's office with her

2

information despite knowing for months that defendant was charged with rape. The store owner testified that he had seen Denise and defendant laughing and hugging each other sometime in the weeks before the alleged rape. However, the owner conceded that he did not know if Denise wanted to hug defendant, or was scared of defendant. The store owner also admitted that he saw defendant grab girls when they were at the store counter paying for things. The store owner was bothered by defendant touching girls who came into the store and on at least one occasion told defendant to leave.

Cal. Ct. App. Opinion, pp. 2-4.

Bankston was convicted in a jury trial in the Alameda Count Superior Court of forcible rape of a minor and kidnapping for the purpose of rape. See Cal. Penal Code §§ 209(b)(1), 261(a)(2). On February 6, 2004, the court sentenced Bankston to 25 years to life in prison for the aggravated rape and stayed the sentence on the kidnapping charge.

Bankston appealed. The California Court of Appeal affirmed the conviction in a reasoned decision. The California Supreme Court denied the petition for review.

Bankston then filed this action, seeking a writ of habeas corpus. The court issued an order to show cause why the writ should not be granted on two claims: (1) a claim that the exclusion of evidence about the victim's parents' prior acts of domestic violence violated Bankston's rights to confront witnesses and present a defense, and (2) a claim that his due process right to a fair trial was violated when the prosecutor made improper comments during his closing argument. Respondent filed an answer and Bankston filed a traverse. The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

3

highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

## DISCUSSION

A.   Exclusion Of Evidence About Victim's Parents' Prior Acts Of Domestic Violence

   1.   Background

Bankston argues that the trial court improperly excluded evidence of the prior bad acts of Denise's parents.  He wanted to introduce this evidence to show that Denise fabricated the rape claim because she was afraid of telling her parents she had spilled paint on her new clothes when she engaged in consensual sex with Bankston.  The prosecution moved in limine to exclude evidence of various police reports of domestic violence, including police reports that her mother had stabbed her father with a screwdriver five years before the rape and that her mother had slapped Denise's sister in the face ten years before the rape.  Defense counsel conceded that she had no evidence that Denise had been present at any of the episodes of domestic violence that occurred before the reported rape.  See RT 106-07.  After a hearing, the trial court excluded the evidence of the police reports under California Evidence Code § 352.  The court doubted that it would "be a concise, expeditious production of evidence."  RT 122.  Proving up the domestic violence incidents might entail many

4

1 witnesses, such as family members, police officers, and people who examined the victims in
2 the hospital or at the jail. The court was concerned that it "would be creating a series of trials
3 on domestic violence" within Bankston's rape trial. RT 122, 139. The probative value of the
4 evidence was "entirely speculative," there would be an undue consumption of time, and
5 confusion of the jury. RT 122, 139. Although the court excluded evidence of the domestic
6 violence history of her parents, the court permitted the defense to question Denise and other
7 witnesses on whether Denise was afraid of her mother.

8       The California Court of Appeal determined that the evidence was properly excluded
9 under Evidence Code § 352 and its exclusion did not violate Bankston's constitutional right
10 to cross-examine witnesses. Cal. Ct. App. Opinion, pp. 5-6. The appellate court believed the
11 evidence was of speculative value because there was no showing that Denise knew about the
12 incidents or that, if she did, they would have motivated her to falsely accuse Bankston of
13 rape. Also, the domestic violence evidence would have required an undue consumption of
14 time to prove up the domestic violence incidents that had not resulted in convictions. The
15 appellate court also explained that the exclusion of the evidence did not prejudice Bankston
16 because the defense was fully able to present its theory that Denise fabricated the rape
17 accusations due to her fear of telling her mother that she had consensual sex. Evidence was
18 presented that Denise told her friend, T. Owens, that she was "scared" to tell her mother and
19 that Denise told her mother she was "scared" when her mother asked her what was wrong.
20 Id. at 6. Denise testified that she was not fearful but was ashamed to tell her mother about
21 the incident. Evidence was presented about Denise's mother's parenting style that showed
22 her to be strict with Denise. The defense emphasized this point in closing argument, i.e., that
23 Denise lied because she feared her strict mother. Id.

24     2.    Analysis

25       The Confrontation Clause of the Sixth Amendment provides that in criminal cases the
26 accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI.
27 The right applies to the states through the Fourteenth Amendment. See Pointer v. Texas, 380
28 U.S. 400, 403 (1965). The ultimate goal of the Confrontation Clause is to ensure reliability

5

of evidence, but "it is a procedural rather than a substantive guarantee.  It commands, not that evidence be reliable, but that reliability be assessed in a particular manner:  by testing in the crucible of cross-examination."  Crawford v. Washington, 541 U.S. 36, 61 (2004); see Davis v. Alaska, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.")  "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."  Id. at 316-17.  The Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Delaware v. Fensterer, 474 U.S. 15, 20 (1985).  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

Similarly, the Due Process Clause does not guarantee the right to introduce all relevant evidence.  Montana v. Egelhoff, 518 U.S. 37, 42 (1996).   A defendant does not have an unfettered right to offer evidence that is incompetent, privileged or otherwise inadmissible under standard rules of evidence.  Id.  The exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  Id. at 43 (internal quotations omitted).

In this case, the analysis begins by noting that California Evidence Code § 352 is a rather commonplace kind of evidentiary rule allowing the exclusion of evidence where its probative value is substantially outweighed by some other factor.  Under § 352, evidence can be excluded when its probative value is outweighed by the probability that its admission will necessitate undue consumption of time, be unduly prejudicial, confuse the issues or mislead the jury.  Section 352 itself does not offend due process or the Confrontation Clause.  And the application of § 352 to exclude the evidence did not result in a violation of Bankston's

6

1  right to due process or right to confront witnesses.

2  The trial court's determination that the domestic violence evidence would not be
3  admitted was well within that wide latitude a court has to impose reasonable limits on cross-
4  examination. The probative value of the evidence was greatly outweighed by its potential for
5  confusion and consumption of time. The evidence was collateral to the issue of Bankston's
6  guilt. The evidence did not pertain to Denise's domestic violence history but instead to that
7  of her parents. The defense conceded it had no evidence that Denise had been present at, or
8  aware of, any of the domestic violence incidents. The particular episodes of domestic
9  violence the defense wanted to emphasize – that Denise's mother reportedly had stabbed her
10 husband with a screwdriver and reportedly had slapped Denise's sister – were remote in time
11 and apparently had not resulted in convictions. The trial court was properly concerned with
12 the likelihood of "trials within a trial" to determine what had happened in the domestic
13 violence incidents. Presentation of the evidence would consume considerable trial time and
14 likely would confuse the jurors, whose real task was to determine Bankston's guilt and not
15 the violence level in the accuser's household. Even without the detour into Denise's parents'
16 domestic violence history, this was a lengthy trial.

17 Most significantly, the defense was able to effectively develop the point that Denise
18 would fear the wrath of her mother even without the use of the police report. The defense
19 established that Denise's mother was adamant that she did not want Denise to become a
20 teenage mother like her sister and repeatedly sent that message to Denise. This provided
21 enough evidence for the jury to evaluate whether Denise was afraid to tell her mother the
22 truth. With or without the domestic violence evidence, the defense was able to develop the
23 evidence to argue that Denise fabricated the rape claim because she was afraid to tell her
24 mother that she had consensual sex because of her mother's stern disapproval of her having
25 sex. See, e.g., RT 1850 (mother's testimony that she had rules of behavior for Denise to
26 follow); RT 1895-99 (mother's testimony that she emphasized idea that Denise was not to
27 have a baby when she was a teenager and reiterated the point every time she thought Denise
28 was talking to a boy); RT 1716-17 (Tannella Owens' testimony that Denise's mother was

strict and Denise thought she might be angry). It was a reasonable limit on cross-examination to preclude inquiry into whether Denise's mother had assaulted other family members, even though Bankston speculated that he could have developed evidence that Denise feared a beating from her mother if she told her she ruined her new clothes while having consensual sex. The exclusion of the domestic violence evidence did not deprive Bankston of an opportunity for effective cross-examination. There was not a Confrontation Clause violation.

Similarly, the exclusion of the evidence did not violate Bankston's right to due process or to present a defense. In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004), cert. denied, 544 U.S. 919 (2005); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000), cert. denied, 532 U.S. 984 (2001). The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. See Chia, 360 F.3d at 1006. Here, (1) the victim's parents' domestic violence history evidence was not probative on the central issue of Bankston's guilt; (2) the evidence was of unknown reliability as most of the reports had not resulted in convictions and it was unknown whether Denise even knew of the domestic violence incidents; (3) the evidence would have been confusing to the jury because it was on a collateral point that was being established just so that an inference could be drawn as to another person's credibility; (4) the domestic violence evidence was not the only evidence for the point that Denise fabricated the rape charge because she was afraid of her mother; and (5) the domestic violence of Denise's parents was not a major part of the defense. The exclusion of the evidence that Denise's parents had engaged in acts of domestic violence in the past did not significantly hinder the defense. Evidence was admitted that her mother was extremely averse to Denise becoming pregnant at age 16 and was very vocal

with her feelings.  See RT 1897-99.  It was not necessary to show that her mother had been violent in the past to make the defense point that Denise would have been afraid to tell her disapproving mother that she had consensual sex.

Defense counsel was allowed to and did explore whether Denise was afraid to tell her mother what had happened.  The exclusion of the domestic violence evidence did not distort the truth or preclude the "opportunity for effective cross-examination."  Delaware v. Fensterer, 474 U.S. at 20.  Nor did the exclusion of the domestic violence evidence prevent Bankston from presenting his defense.  In light of the state's significant interest in excluding evidence where its probative value is substantially outweighed by jury confusion and undue consumption of time, the state court's rejection of Bankston's claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the Supreme Court.

B.    Prosecutorial Misconduct Claim

1.    Background

Bankston claims that the prosecutor engaged in  misconduct during his closing argument when he argued that the evidence that defendant was a drug dealer showed that he was just the kind of person who would commit a rape.  To analyze this claim, it is necessary to understand what the defense had argued, as the prosecutor's comment was responsive to the defense argument.

In the opening statement, one of the themes of the defense was that Bankston was a drug dealer who sold drugs at the street corner where the store was located (behind which the rape reportedly occurred) and he had to avoid otherwise irritating his neighbors so they would not report him to the police.  See RT 672-74.  Another theme was that Bankston had ready access to sex partners and therefore had no reason to rape Denise; defense counsel asserted that the female addicts were willing to trade sex for crack cocaine.  RT 675. Defense counsel asserted that Bankston "has no problem getting sex, consensual from any number of addicted women who want to have crack cocaine from him.  So Mr. Bankston is not going to be an out-of-control sex maniac who rapes and pillages people on the street." RT 675.

9

In the closing argument, defense counsel returned to the theme that Bankston had no "need" to rape Denise. Defense counsel reminded the jury of the comments in the opening statement about Bankston's drug dealership that gave him access to money and drugs, and argued that Bankston "was a good-looking man, and that there were a lot of women who liked him, and that he was friendly to a lot of them. So he had no motive" to rape Denise. RT 2815-16.   Defense counsel again returned to the theme as she finished her closing argument, reiterating that Bankston had no motive to rape anyone, he was selling crack cocaine and marijuana, and "his livelihood depends upon him maintaining a good relationship with the neighborhood. And as a consequence, he's not about ready to rape somebody from the neighborhood in an area where he does business and where everybody knows who he is." RT 2925. Defense counsel also reiterated that "the ladies like" Bankston and the drug-addicted women were willing to trade sex for drugs so that if Bankston wanted to have sex, he could have had it with any of them. RT 2926-27.

The prosecutor's rebuttal closing argument responded to defense counsel's statements in two ways. The prosecutor argued that the existence of any readily available willing sex partners for Bankston was beside the point because rape is "a power thing," rather than just a matter of having sex. RT 2945. The prosecutor also argued that the evidence that Bankston was a drug dealer could be considered by the jury for any purpose because it had not been admitted in evidence with any limiting instruction, even though some comments in the jury voir dire may have indicated the evidence of Bankston's drug dealing could not be considered for purposes of determining whether he committed the rape. RT 2958-59. The prosecutor then stated: "You get to do the natural thing. You get to consider this crack dealer, marijuana salesman for what he is. That's what he is. Is he the type of person who would do this type of thing? Well, if you believe the fact that he sells drugs and he's more than likely to be the type of person that does this thing, then you can use the evidence in that manner." RT 2959. Defense counsel objected on the ground that the prosecutor was misstating the law and arguing for consideration of character evidence. The court overruled the objection. RT 2959.

10

The California Court of Appeal rejected Bankston's contention that the prosecutor erred.  First, not only had the defense not requested a limiting instruction regarding the evidence of Bankston's drug dealing, the defense had affirmatively argued that the evidence was admissible for all purposes.  Cal. Ct. App. Opinion, pp. 8-9; see RT 2925 (defense counsel arguing statements in background of 9-1-1 call that Bankston was selling drugs "came in its entirety for you to consider in its entirety as evidence.  This background voice you hear is evidence that you can use to determine the truth in this case").  Second, the defense had "opened the issue of defendant's character by arguing to the jury that drug dealers are unlikely rapists because they have easy access to sex and a business to protect." Cal. Ct. App. Opinion, p. 9. The court explained that the defendant had no right to mislead the jury through one-sided character testimony and prohibit the prosecutor from responding to it.  Third, any error was harmless.

> [E]ven if the prosecutor's statement constituted an improper reference to [Bankston's] character based on his prior criminal activities as a drug dealer, [Bankston] cannot establish prejudice given the overwhelming evidence of his guilt. . . . Denise's physical injuries and the circumstances surrounding the crime demonstrate that it is not reasonably probable that defendant would have been acquitted but for the prosecutor's brief comment.  The medical examination immediately following the incident found that Denise had extensive physical injuries consistent with rape and inconsistent with consensual intercourse.  Eyewitnesses also testified that Denise was crying and distraught, and defendant's claim of consensual sex was further refuted by the circumstances of the incident.  It strains credulity to think that a 16-year-old sexually inexperienced girl, dressed in jeans over pajama pants and expected home from a short errand, chose to have sex with defendant in a dark and dirty shed on a winter night.

Cal. Ct. App. Opinion, pp. 9-10.

2.      <u>Analysis</u>

The appropriate standard of review for a prosecutorial misconduct claim in a federal habeas corpus action is the narrow one of due process and not the broad exercise of supervisory power.  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's comments render a trial fundamentally unfair. <u>Id.</u>; <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.")  Under <u>Darden</u>, the inquiry is whether the prosecutor's remarks were improper

11

and, if so, whether the comments infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005), cert. denied, 546 U.S. 1110 (2006). In deciding the question of whether there has been prosecutorial misconduct, the court can consider whether the comment was responsive to something done by the defense. See Darden, 477 U.S. at 182; see also United States v. Young, 470 U.S. 1, 5 (1985) (prosecutor's comment that he personally thought the defendant was guilty had to be viewed in context of defense counsel's earlier statement that "there's not a person in this courtroom including those sitting at this table who think [defendant] intended to defraud [the victim]"). The "invited response" rule does not give a prosecutor permission to respond to improper argument with his own improper argument, but instead is an analytic tool. "[T]he issue is not the prosecutor's license to make otherwise improper arguments, but whether the prosecutor's 'invited response,' taken in context, unfairly prejudiced the defendant. [¶] In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. Thus, the import of the evaluation has been that if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." Young, 470 U.S. at 12-13.

    Here, the prosecutor's comments for the most part were a fair response to defense counsel's argument that Bankston would not have committed a rape because he was a drug dealer who wanted to keep a low profile. The prosecutor urged a contrary inference from the same evidence, i.e., that just because Bankston was a drug dealer did not mean he was unlikely to commit rape for fear of disrupting his business. The prosecutor went one extra, and improper, step when he suggested that, as a drug dealer, Bankston was the kind of person likely to commit a rape. See RT 2959. The prosecutor's argument did not make the trial fundamentally unfair, however, as he did not improperly manipulate or misstate the evidence or implicate any specific rights of the accused. See Darden, 477 U.S. at 181-82. The real damaging information was that Bankston was a drug dealer peddling drugs at the street corner, but that information came in from the defense, which relied heavily on Bankston's

drug dealing activities to suggest defendant had a reason not to commit a rape at that street corner. The prosecutor properly challenged that reasoning. In light of the defense counsel's extensive references to Bankston's drug dealing and access to willing sex partners due to his drug supply and personal magnetism, the prosecutor's impermissible inference did not break much new ground. The impermissible inference the prosecutor asked the jury to draw likely had little effect because it was not particularly logical – i.e., that a drug dealer had the propensity to be a rapist – and was an isolated comment. Finally, as the California Court of Appeal explained, there was strong evidence that a rape had occurred: the physical examination found that Denise had extensive physical injuries that were consistent with rape and inconsistent with consensual intercourse; there was testimony from witnesses who observed Denise crying and distraught immediately after the incident; and the circumstantial evidence showed it to be extremely unlikely that Denise went to the store to have consensual sex with Bankston.

      The prosecutor's statement did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. See Darden, 477 U.S. at 181. Bankston is not entitled to the writ on this claim.

## CONCLUSION

      The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

      IT IS SO ORDERED.

DATED: April 9, 2008

                                Marilyn Hall Patel
                                United States District Judge